UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN M. VORGITCH

      Plaintiff,

v.

CITY OF HARPER WOODS, VINCENT
SMITH, Individually and in his capacity
as Harper Woods' Director of Public
Safety, and JOHN SZYMANSKI,
Individually and in his capacity as
Harper Woods Acting City Manager,
Jointly and Severally.

      Defendants,

---

PITT, MCGEHEE, PALMER, BONANNI & RIVERS P.C.
ROBERT W. PALMER (P31704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248)398-9800

---

## **COMPLAINT AND JURY DEMAND**

      NOW COMES the Plaintiff, JOHN VORGITCH, by and through his attorneys,

PITT, MCGEHEE, PALMER, BONANNI, & RIVERS, P.C., and in support of the instant

action, states as follows:

1

## **INTRODUCTION**

1.      On June 13, 2020, Defendants suspended Plaintiff and gave him notice of an active investigation by the Michigan State Police ("MSP") into the circumstances surrounding a detainee's death at the Harper Woods' Police Department jail. Approximately two months later, Plaintiff was terminated from his position as Deputy Chief in the Department of Public Safety without notice of charges, identification of evidence or a hearing, contrary to the United States Constitution's due process clause as set forth in the Fifth Amendment. Furthermore, it was publicly announced that Plaintiff was fired for concealing and manipulating evidence in said investigation.

2.      This is an action for legal relief and damages premised upon Defendants' actions in denying Plaintiff his constitutional right to procedural due process, depriving Plaintiff his constitutional liberty interests without due process of law, intentionally inflicting emotional distress on Plaintiff, defaming Plaintiff, and placing Plaintiff in a false light in the public eye.

3.      Plaintiff's constitutional rights upon which this action is brought are secured by and through the Fifth and Fourteenth amendments to the United States Constitution and are brought pursuant to 42 U.S.C. §1983.

4.      This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §1331. Venue is proper pursuant to 28 U.S.C. §1391(b) because all events

in controversy occurred in this judicial district. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## **THE PARTIES**

5.     Plaintiff John M. Vorgitch ("Vorgitch"), at all times material hereto, was a resident of Macomb County, Michigan and was employed by Defendant City of Harper Woods ("Harper Woods") as a Deputy Police Chief of the City of Harper Woods.

6.     Defendant Smith, at all times material hereto, was and is the Director of the Department of Public Safety, and as such, is the chief law enforcement officer within the city of Harper Woods and manages the department.

7.     Defendant Harper Woods, at all times material hereto, is a municipal body politic, organized and existing under the laws of the state of Michigan.

8.     Defendant John Szymanski ("Szymanski"), at all times material hereto, was and is the acting City Manager for the City of Harper Woods. Smith, Harper Woods, and Szymanski will be collectively referred to as "Defendants."

9.      The following individuals, although not named as Defendants, at all times material hereto, held supervisory positions within the Harper Woods' Department of Public Safety and city government:

    (a)      Ted Stager ("Stager"), Deputy Police Chief;

    (b)      Kenneth Poynter ("Poynter"), Previous Mayor;

    (c)      Valerie Kindle ("Kindle"), Mayor at the time of Plaintiff's discharge; and

    (d)      Joseph Rheker III ("Rheker"), City Manager on leave due to military deployment.

10.      The following individuals, although not named as Defendants, at all times material hereto, were employed by Harper Woods and or Wayne County, either as attorneys and/or administrative personnel:

    (a)      John J. Gillooly ("Gillooly"), City Attorney

    (b)      Sharon Dewaele-Persichini ("Persichini"), City Attorney

    (c)      Leslie Frank ("Frank"), City Clerk

    (d)      Kenneth Wilson ("Wilson"), Director of Labor Relations

    (e)      Kim L. Worthy ("Worthy"), Prosecuting Attorney, Wayne County

4

## **GENERAL ALLEGATIONS**

11.     On June 10, 2020, Plaintiff reported to work at 6:30 a.m., filling in as the "shift supervisor" for that specific day.

12.      At approximately 12:30 p.m. that day, detainee Priscilla Slater ("Slater") was found deceased inside cell # 4 by an administrative civilian worker.

13.     Immediately upon being alerted of Ms. Slater's death, Patrol Officer Michael Pineau ("Pineau") and Plaintiff rushed to the cell to investigate.

14.     Shortly thereafter, they were followed into the cell by Deputy Police Chief Stager, who by virtue of his position, was the officer in charge of the investigation.

15.     Emergency medical services ("E.M.S.") was on scene at virtually the same time as Plaintiff, Pineau, & Stager to investigate the scene and document the medical condition of the deceased.

16.     Shortly after Plaintiff and Pineau completed their investigation, Pineau sent a draft of his report to Plaintiff for review, as he was acting shift supervisor for the day.

17.     As the Deputy Chief on duty on June 10, 2020, Stager was the chief investigator, the officer in charge, and the point of contact to the MSP. By virtue

of those roles, Stager had supervising authority over the investigation of Slater's death.

18.     Plaintiff reviewed Pineau's draft of the incident report with Deputy Chief Stager as it contained numerous spelling errors and also contained medical terminology rather than physical observations.

19.     Both Plaintiff and Deputy Chief Stager took issue with Pineau's use of the medical term "rigor" to describe the stiffness Pineau observed in the decedent's arms.

20.     Stager suggested to Plaintiff that he recommend to Pineau that the word be removed because Pineau was not qualified to use a medical term as a police officer with no formal medical training. Additionally, E.M.S were already on scene documenting their findings in their report that was expected to be much more detailed with respect to medical findings than the one prepared by Pineau.

21.     Based on Plaintiff's discussion with Stager, Plaintiff recommended that Pineau delete the word "rigor" and instead use lay terms to document his observations of the deceased.

22.     Meanwhile, Stager made a request to the MSP that they conduct an independent investigation into circumstances surrounding the death of Slater.

23.    On June 13, 2020, Defendant Smith called Plaintiff to inform him that he was being placed on paid administrative leave for the duration of MSP's investigation. Plaintiff was not given notice of any charges, hearing, or any other explanation for the disciplinary action.

24.    Defendant Smith then informed the media that 6 employees of the Department of Public Safety were on administrative leave pending the results of MSP's investigation.

25.    On August 18, 2020, Plaintiff was interviewed by Detective Sergeant Josh Henry and Detective Lieutenant Robe Weimer, in the presence of Police Officers Association of Michigan (POAM) attorney Doug Gustscher, regarding the circumstances surrounding the death of Slater and Pineau's use of the word "rigor" in his draft report.

26.    Upon information and belief, on August 19, 2020, Kindle, Szymanski, Wilson, Smith, Persichini, and other key city officials held a meeting to discuss Vorgitch's employment.  At that meeting Smith, Szymanski, Wilson, and Persichini recommended terminating Vorgitch.

27.    Upon information and belief, Kindle cautioned against taking any disciplinary action until the MSP had completed their investigation at the August 19, 2020, meeting.

28.     Later in the day on August 19, 2020, Defendant Smith called
Vorgitch to the police station where he was summarily terminated prior to the
conclusion of the MSP investigation without any notice of charges,
identification of evidence, hearing, or any other explanation as to the
disciplinary action. Plaintiff's employment benefits were also halted without
notice of charges, hearing, or any other explanation.

29.     Subsequently, Szymanski publicly defamed Plaintiff in a press
release shortly thereafter in which he stated that although the MSP
investigation was ongoing, Plaintiff was being terminated for attempting to
"conceal and manipulate evidence in the in-custody death of [Slater]", an
allegation with no basis in fact.

30.     The statement in the press release that Plaintiff was terminated for
attempting to "conceal and manipulate evidence in the in-custody death of
Slater" was publicly disseminated to the media and police community.

31.     Defendant Smith submitted information to the Michigan
Commission on Law Enforcement Standards ("MCOLES") revoking Plaintiff's
law enforcement license, rendering him unemployable by any other law
enforcement agency in the state.

32.     Plaintiff's reputation was tarnished across the entire state,
including but not limited to the Detroit Police Department where Plaintiff's wife

8

worked, creating additional barriers to Plaintiff's ability to secure employment elsewhere.

33.     From the day Plaintiff was placed on administrative leave until his termination – a span of over 2 months – there was no communication between him and anyone at either the Police Department or City of Harper Woods.

34.     Defendants never held a Loudermill hearing, internal investigation, gave notice of charges or held any hearing before terminating Plaintiff's employment.

35.     At the time of his termination Plaintiff had a vested interest in continued employment by virtue of a Collective Bargaining Unit between the City of Harper Woods and COAM.

36.     On or about November 20, 2020, Plaintiff was placed back on Payroll at a reduced salary pursuant to Szymanski's determination. This too was decided absent any hearing or investigation.

37.     Upon information and belief, on or about January 15, 2021, Mayor Kindle reportedly said that Plaintiff's termination was done improperly. She added that Plaintiff will likely be vindicated and get his job back in arbitration proceedings.

38.      On May 20, 2021, after all relevant investigations were complete and the MSP report was finalized, Wayne County Prosecutor Worthy

announced that no charges were to be filed against anyone for the death of Slater. Additionally, Worthy vindicated Plaintiff by saying that Plaintiff "…did not appear to exert any undue or improper influence upon [Pineau] when he suggested the change [in terminology]" and continued by saying "The recommended change was made in the context of routine review of the subordinate's draft report for accuracy and completeness, and therefore does not constitute criminal action or an intent to subvert a criminal investigation."

39.     Plaintiff was asked to return to work but only in a civilian capacity carrying out administrative duties on June 1, 2021, pending MCOLES reactivating his license. This too was done without any notice of charges, hearing, or any other reason.

40.     Despite the findings of the MSP and the Wayne County Prosecutors office, not one Defendant has retracted any public statements made in the press release on August 19, 2020.

41.     Pursuant to Szymanski's press release, local and national media outlets broadcasted Plaintiff's termination for concealing and manipulating evidence of an in-custody death using his name and image, portraying him in a false light by publishing numerous articles for almost a year. They defamed Plaintiff as a corrupt police officer who attempted to cover up the death of a

detainee. In addition to the aforementioned, Gillooly made statements on behalf of Harper Woods to the media, further portraying Plaintiff in a false light.

42.     Plaintiff's friends, colleagues, and relatives began avoiding him and his family because of the false accusations. His reputation was permanently tarnished because of this incident. Furthermore, Plaintiff's wife was also ostracized by colleagues, friends, and relatives.

43.     As a direct and proximate result of Defendants' outrageous conduct of wrongfully terminating Plaintiff and publishing false statements about him, Plaintiff suffered extreme emotional distress. He feared for his and his family's safety from violent protesters that may have shown up to his house after the incident and suffered from elevated levels of stress and anxiety.

44.     Plaintiff also suffered countless panic attacks, sleepless nights, nightmares, and other symptoms of Post-Traumatic Stress Disorder.

45.     As a result of the symptoms Plaintiff suffered, he saw two doctors, Dr. Kenneth Wolf and Dr. Arash Javanbakht, who prescribed antidepressants and sedatives to aid Plaintiff with his symptoms.

46.     The actions of the Defendants, individually and through their agents as set forth herein, clearly evidence a deliberate plan and effort on the part of the Defendants to deny Plaintiff fundamental procedural due process, including but not limited to the following:

11

(a)   Failing to provide him with reasonably accurate and specific charges which support any of the disciplinary actions taken;

(b)   Failing to provide him with a description of the evidence against him;

(c)   Failing to provide him with any opportunity to reasonably respond to specific charges; and

(d)   Failing to provide him with a "hearing board," the fundamental Loudermill procedural due process hearing afforded to all public employees with a vested interest in their employment.

47.   As a direct and proximate result of the aforementioned wrongful actions of the Defendants, Plaintiff has suffered the following injuries:

(a)   Lost Wages;

(b)   Lost Benefits;

(c)   Severe and significant emotional distress, humiliation, and mental trauma;

(d)   Punitive damages because of Defendants reckless and malicious disregard of Plaintiff's constitutionally protected rights;

(e)   Damage to his reputation;

(f)     Attorney fees and costs;

(g)     Other elements of damages to be determined.

### COUNT I
### DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF 42 U.S.C. § 1983

48.     Plaintiff hereby incorporates by reference all allegations set forth above, as if fully set forth herein.

49.     Under the Fifth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment of the United States Constitution, Plaintiff, as a public sector employee with a vested interest in his employment, enjoys a constitutional right to receive procedural due process prior to termination and/or other significant discipline affecting his employment status, including but not limited to a notice of charges against him, an explanation of the employer's evidence against him, and a meaningful opportunity to present his side of the story to clear his name and dispute the charges.

50.     To date, Plaintiff has not been afforded procedural due process as defined above and/or as required by the United States Constitution with respect to his suspension, termination, and subsequent reinstatement at a diminished role.

51.     Defendants, individually and by and through the acts of their agents, have repeatedly and intentionally refused to provide Plaintiff with his well-known and well-established constitutional right to fundamental procedural due process through a Loudermill hearing.

52.     As a direct and proximate result of the Defendants' intentional and willful failure to provide Plaintiff with procedural due process prior to the imposition of discipline and/or termination, Plaintiff has suffered damages as alleged above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a)     Compensatory damages against the Defendants in an amount which equitably compensates Plaintiff for the damages alleged above;

(b)     Punitive damages against Smith, Harper Woods, and Szymanski;

(c)     An order requiring that Plaintiff be restored to his prior position;

(d)     An order of the Court specifically ordering the Defendants to immediately cease publicly portraying Plaintiff in a false light.

14

(e) An order of the Court specifically ordering the Defendants to immediately retract the false and defamatory statements described above.

(f) An award of actual attorney fees; and

(g) Any further relief that this Honorable Court deems equitable or just.

**COUNT II**
**OCCUPATIONAL LIBERTY INTEREST CLAIM**

53.  Plaintiff hereby incorporates by reference all of the allegations set forth above, as if fully set forth herein.

54.  Plaintiff's suspension on June 13, 2020, and his reinstatement on May 20, 2021, at a reduced rate and his termination on August 19, 2020, are not based in fact, and have been imposed absent any procedural due process, and further stigmatizes and defames the Plaintiff while preventing and unduly limiting him from seeking employment elsewhere in the field of law enforcement.

55.  The Defendants' alleged reason as announced in the press release on August 19, 2020, for initially suspending Plaintiff was false and/or with no basis in fact.

56.    The Defendants' alleged reason for subsequently terminating Plaintiff was false and has no basis in fact.

57.    The Defendants' alleged reason for not rehiring Plaintiff into his original position was false and has no basis in fact.

58.    The actions of the Defendants in suspending, subsequently terminating, and then rehiring Plaintiff at a reduced capacity were premised upon false statements of personal characteristics of the employee, *to-wit*: his lack of honesty and his untrustworthiness in allegedly concealing and manipulating evidence and have caused Plaintiff to suffer the damages and injuries as set forth in above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a)    Compensatory damages against the Defendants in an amount which equitably compensates Plaintiff for the damages alleged in Paragraph 32, above;

(b)    Exemplary/punitive damages against Smith, Harper Woods, and Szymanski;

(c)    An order requiring that Plaintiff be restored to his prior position;

16

(d)     An order of the Court specifically ordering the Defendants to immediately cease publicly portraying Plaintiff in a false light.

(e)     An order of the Court specifically ordering the Defendants to immediately retract the false and defamatory statements described above.

(f)     An award of actual attorney fees; and

(g)     Any further relief that this Honorable Court deems equitable or just.

## COUNT III
## FALSE LIGHT CLAIM

59.    Plaintiff hereby incorporates by reference all of the allegations set forth above, as if fully set forth herein.

60.    Allegations made and published by Defendant's in press releases about the personal characteristics of Plaintiff were completely untrue and malicious in nature. Local and national news outlets published multiple stories for almost an entire year based on the false allegations published by Defendants with no basis in fact, publicly placing Plaintiff in a false light.

61.    The false statements published by Defendants were done so before MSP's investigation yielded any finalized results and were made with no basis

17

in fact, making the Defendants' publishing of such statements a reckless and/or intentional disregard of Plaintiff's rights.

62.    The false statements published and acted upon by Defendants demonized and irreparably harmed Plaintiff in the public eye.

63.    Defendants intentionally published the statements with complete and reckless disregard as to the offensive nature of the statements.

64.    The false statements of personal characteristics of Plaintiff, specifically his lack of honesty and his untrustworthiness, have caused Plaintiff to suffer the damages and injuries as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

> (a)    Compensatory damages against the Defendants in an amount which equitably compensates Plaintiff for the damages alleged in Paragraph 32, above;
>
> (b)    Exemplary/punitive damages against Smith, Harper Woods, and Szymanski;
>
> (c)    An order requiring that Plaintiff be restored to his prior position;

18

(d)     An order of the Court specifically ordering the Defendants to immediately cease publicly portraying Plaintiff in a false light.

(e)     An order of the Court specifically ordering the Defendants to immediately retract the false and defamatory statements described above.

(f)     An award of actual attorney fees; and

(g)     Any further relief that this Honorable Court deems equitable or just.

### COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

65.     Plaintiff hereby incorporates by reference all of the allegations set forth above, as if fully set forth herein.

66.     Defendants acted recklessly and intentionally when they terminated Plaintiff and published defamatory statements with no basis in fact.

67.     Defendants acted extremely and outrageously when they deprived Plaintiff of his job and published false statements about him with no evidence and/or basis in fact.

68.     As a result of Defendant's aforementioned intentional, reckless, extreme, and outrageous conduct, Plaintiff suffered severe emotional distress

as is evidenced by his diagnosis by medical professionals who are specialists in the field.

69.    Defendants' outrageous and/or extreme behavior persisted even after evidence completely vindicating Plaintiff came to light have caused Plaintiff to suffer the damages and injuries as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a)    Compensatory damages against the Defendants in an amount which equitably compensates Plaintiff for the damages alleged in Paragraph 32, above;

(b)    Exemplary/punitive damages against Smith, Harper Woods, and Szymanski;

(c)    An order requiring that Plaintiff be restored to his prior position;

(d)    An order of the Court specifically ordering the Defendants to immediately cease publicly portraying Plaintiff in a false light.

(e)    An order of the Court specifically ordering the Defendants to immediately retract the false and defamatory statements described above.

(f)     An award of actual attorney fees; and

(g)     Any further relief that this Honorable Court deems equitable or just.

## COUNT V
## DEFAMATION CLAIM

70.    Plaintiff hereby incorporates by reference all of the allegations set forth above, as if fully set forth herein.

71.    The false statements published by Defendant's were done so with no basis in fact and/or with no evidence and were made intentionally.

72.    Defendants intentionally published the false statements in official city documents and so were purported to be truthful and/or factual.

73.    Defendants intentionally disbursed false statements to the public, thus communicating them to a third party.

74.    Defendants intentionally decided to act and publish false statements with no basis in fact, as they were made before the conclusion of MSP's investigation with no supporting evidence. Additionally, defendants knew that the statements were dangerous, were untrue and would injure Plaintiff and his reputation but recklessly and intentionally published them anyway.

21

75.    As a result of Defendants' intentional and reckless behavior, Plaintiff suffered irreparable harm to his reputation, both socially and professionally, as this false information was used to revoke his MCOLES certification.

76.    Plaintiff suffered additional damages as set forth by the false and defamatory statements as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a)    Compensatory damages against the Defendants in an amount which equitably compensates Plaintiff for the damages alleged in Paragraph 32, above;

(b)    Exemplary/punitive damages against Smith, Harper Woods, and Szymanski;

(c)    An order requiring that Plaintiff be restored to his prior position;

(d)    An order of the Court specifically ordering the Defendants to immediately cease publicly portraying Plaintiff in a false light.

(e)    An order of the Court specifically ordering the Defendants to immediately retract the false and defamatory statements described above.

(f)    An award of actual attorney fees; and

(g)    Any further relief that this Honorable Court deems equitable or just.


Respectfully submitted,

PITT, MCGEHEE, PALMER, BONANNI, & RIVERS


By: */s/ Robert W. Palmer*
ROBERT W. PALMER (P31704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248)398-9800
rpalmer@pittlawpc.com

Dated:  July 16, 2021

## **DEMAND FOR JURY TRIAL**

Plaintiff by is counsel hereby demands a trial by jury of the facts and issued involved in this matter.

Respectfully submitted,

PITT, MCGEHEE, PALMER, BONANNI, & RIVERS

By: */s/ Robert W. Palmer*
ROBERT W. PALMER (P31704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248)398-9800
rpalmer@pittlawpc.com

Dated:  July 16, 2021